UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTT MARTIN,

    Plaintiff,                                          Case Number 11-10433-BC
v.                                                        Honorable Thomas L. Ludington

WAL-MART STORES, INC.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CANCELING HEARING**

In July 2009, Plaintiff Scott Martin ("Plaintiff") was employed as a carpenter by Northwest Enterprises ("Northwest"). Northwest was performing subcontract work for Jenkins Construction, the general contractor that Defendant Wal-Mart ("Defendant" or "Wal-Mart") hired to perform remodeling in its Saginaw store, located at 5650 Bay Road, Saginaw, Michigan. One area included in the remodel plan was the space behind the counter in the Deli Department. Although the store was open twenty-four hours a day, the Deli Department was closed to customers at night and the lights were usually left off to avoid customers coming to the counter and asking the carpenters for help.

On either July 13 or July 15, 2009[1], Plaintiff arrived at Wal-Mart after the Deli Department had been cleaned and closed with the lights turned off. Plaintiff began work in an adjacent produce area for an hour, and then was told by a fellow Northwest employee to set up in the Deli Department in preparation for finishing the floor-to-ceiling installation of a plastic wallboard material. Plaintiff obtained the necessary tools from Northwest's job trailer, which was parked outside in back of the store, and took them to the Deli Department.

---

[1] Plaintiff could not recall during his deposition whether the alleged incident occurred on July 13 or July 15, 2009.

Plaintiff does not recall whether he turned on the lights in the deli area when he began setting up. Plaintiff usually left the lights off. Plaintiff set his work ladder up near the wall about one to two feet away from the deep fryer. Plaintiff described the ladder as a six foot A-frame folding ladder with fiberglass sides and aluminum rails. Plaintiff also testified that some metal racks that normally sat up against the wall were removed, but he does not recall whether he moved the racks or not. Plaintiff climbed the ladder to measure the walls, although he does not recall whether he had a measuring tape in his hand while climbing. As Plaintiff put his left foot on the second rung, he claims that his heavy soled traction boot slipped off the step and hit the ground at an angle, hurting his ankle. Plaintiff shifted his weight to his right foot, let go of the ladder and grabbed his left leg with both hands. His right leg then slipped off the ladder and he fell backwards onto his tailbone.

While sitting on the floor, Plaintiff alleges that he noticed, for the first time, "right where the ladder was, half the ladder was on it and all underneath the deep fryer, up and around was a white film of grease." ECF No. 8 Ex. 1 at 212. Plaintiff described this substance as white, milky, chalky, and shiny, and spattered over an area of at least 8 inches by 22 inches. Plaintiff claims that he could see a footprint in the substance, grease on the sole of his boots, as well as a slip mark where his left foot fell off the ladder. Plaintiff also testified that there were mop marks over the top of the substance. When Plaintiff stood up, the substance no longer appeared white, but he could still see a dull shine in the light that was present. Plaintiff's ankle became swollen and he was directed to go home.

Plaintiff did not look at the floor when he set up the ladder and does not remember whether he had any problems setting up the ladder. He also does not remember if his left foot was slipping on the floor before he climbed the ladder and does not recall looking at the floor prior to climbing

the ladder.

Following his injury at Wal-Mart, Plaintiff alleges that his left ankle and left hip pain became progressively worse. After continued complaints to his primary care doctor, Plaintiff was referred to Dr. Jilani who diagnosed him in September 2009 with left greater trochanteric bursitis, left iliotibial band syndrome, and subsequently diagnosed him in June 2010 with disc herniation at L3·L4 impinging on the left L3 nerve root and possible impression of L4 nerve root. ECF No. 10 Ex. 3. Plaintiff was also referred to Dr. Duncan at Saginaw Valley Hone & Joint Center, who diagnosed him in October 2009 with posterior tib tendon dysfunction and complex regional pain syndrome. *Id.* Ex. 4. Dr. Duncan noted that, following Plaintiff's first injury in 2008, he "had a high degree of function" prior to his injury at Wal-Mart. *Id.* Ultimately, Plaintiff required a left calcaneal osteotomy, a posterior tibial tendon debridement, and posterior tibial tendon to flexure digitorum communis tendon. *Id.* Ex. 5. He also required a L3-L4 left sided hemilaminotomy and discectomy. *Id.*

Plaintiff also received an MRI of his left ankle three days after his fall in the Deli Department. The MRI showed no new abnormalities. Plaintiff's ankle instead showed improvement in its condition from the prior year, when he twisted his ankle falling to the ground while wearing stilts to perform drywall work for a previous employer on another job. Plaintiff had recovered from that injury and was permitted to return to work with no restrictions at the time of the slip and fall in the Deli Department.

Plaintiff subsequently filed the instant action alleging claims of negligence and premises liability in association with his alleged slip and fall while performing work as a subcontractor in Wal-Mart's store. Specifically, Plaintiff claims that he stepped in fryer oil on the floor, which caused

him to fall off his work ladder. Defendant filed a motion for summary judgment, contending that, as the property owner, it is not responsible to Plaintiff on a negligence theory because it did not retain control over Plaintiff's work nor was the work that was being performed inherently dangerous. Defendant also contends that Plaintiff's claim of premises liability likewise fails because the complained of condition was open and obvious and not unreasonably dangerous or unavoidable.

## I. Standard of Review

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II.   Discussion

Federal courts sitting in diversity must apply the state's choice of law provisions. *Gass v. Marriott Hotel Servs. Inc.*, 558 F.3d 419, 425 (6th Cir. 2009). Under the Michigan choice of law provisions, "a tort claim filed in a Michigan court will be governed by Michigan law[.]" *Id.*

### A.   Plaintiff's Negligence Claim

As a general rule, an owner of property is not liable to an employee of an independent contractor for negligence under Michigan law. In such situations, the actual employer of a worker is immediately responsible for job safety and for maintaining a safe workplace. The two main exceptions to this general rule provide for liability if (1) the property owner retains control over the work done and the contractor's activities or (2) the work is inherently dangerous such that the work can reasonably be foreseen as dangerous to third parties. *Samodai v. Chrysler Corp.*, 178 Mich. App. 252, 255 (1989).

Plaintiff has not pled either exception: his complaint does not assert that Wal-Mart retained control or that the work was inherently dangerous. Because Plaintiff has not stated an exception to the general rule of non-liability of a property owner for negligence and Wal-Mart asserts that this claim must fail as a matter of law. Wal-Mart contends that it would not have been liable under a

common work area theory, regardless, because it did not retain control over either the work or the activities of Northwest or its employees, which is made explicit in the contract between Wal-Mart and general contractor Jenkins Construction, Inc. This contract also governs Wal-Mart's relationship with subcontractors. The contract provides:

> 20.1 All agreements and contracts between Contractor and its Subcontractors shall provide, and shall require the Subcontractors to cause all agreements and contracts with Sub-subcontractors to provide, that the Subcontractor or Sub-subcontractor, as the case may be, is subject to all of the terms and conditions of this Contract, except to the extent expressly stated otherwise in the Contract Documents.

ECF No. 8 Ex. 2 at 31. Under the terms and conditions of the contract, Wal-Mart had no control over the activities of Northwest's employees. The contract also provided, in pertinent part:

> 10.1 Owner and Contractor enter into this Contract and the Contract Documents as independent contractors and at arm's length. Neither Owner nor Contractor has the right, and shall not seek, to exercise control over the other party, its employees or its agents. Contractor shall control the methodology for performing the Work to meet Owner's specifications.
>
> 23.17 Notwithstanding any provision in this Contract to the contrary, the Owner does not assume responsibility for the control of the construction personnel of the Contractor or its Subcontractors, Sub-subcontractors or suppliers, for assuring compliance by Contractor or any of its Subcontractors, Sub-subcontractors or suppliers with the obligations set forth herein, or for implementation and enforcement of such obligations, all of which shall remain solely and exclusively the responsibility of the Contractor, and Owner shall not be deemed to be a joint employer of any employees of Contractor or any of its Subcontractors or Subsubcontractors by virtue of any of the terms and conditions hereof.

ECF No. 8 Ex. 2 at 16, 35. Jenkins Construction was also responsible for providing all services and labor necessary or appropriate to complete the project, as stated in the contract:

> 4.2 Contractor shall provide all materials, equipment, supplies and personnel, and shall perform the services and labor,, in each case as may be necessary or appropriate to complete the Work and as set forth in the Contract Documents . . . .

ECF No. 8 Ex. 2 at 8. Wal-Mart did not retain any control over any employees of Jenkins

Construction or Northwest.

Additionally, the work being performed by Plaintiff was not inherently dangerous. Work is inherently dangerous when "the work contracted for is likely to create a peculiar risk of physical harm or if the work involves a special danger inherent in or normal to the work that the employer reasonably should have known about at the inception of the contract." *Schoenherr v. Stuart Frankel Dev. Co.*, 260 Mich. App. 172, 177 (2003) (quoting *Rasmussen v. Louisville Ladder Co., Inc.*, 211 Mich. App. 541, 548-549 (1995)). In this case, Plaintiff was measuring a wall using a six-foot A-frame ladder. ECF No. 8 Ex. 1 at 185. Plaintiff conceded that "you don't have to step up very high to get to where you're working." *Id.* Wal-Mart contends that there is nothing inherently dangerous in this activity. The risk of climbing a six-foot ladder is not unusual or unique, and is not likely to create a peculiar risk of injury. Since Wal-Mart did not retain control over the work, and as the work being performed was not inherently dangerous, Wal-Mart argues that it cannot be held liable on a negligence theory. *Samodai*, 178 Mich. App. at 255.

Finally, Wal-Mart asserts that Plaintiff's negligence claim is also duplicative of his claim of premises liability and must be dismissed on that basis. Specifically, he claims Wal-Mart was negligent because it failed to remove the alleged substance from the floor and to verbally warn Plaintiff or post warning signs. Compl. par. 14. Michigan law is clear that when a plaintiff claims injury as a result of a condition of the land, the claim is exclusively one of premises liability. *Kachudas v. Invaders Self Auto Wash, Inc.*, 486 Mich. 913, 914 (2010); *James v. Alberts*, 464 Mich. 13, 18-19 (2001). As Plaintiff's negligence action is based upon an alleged condition of the land, his claim sounds solely in premises liability, and Wal-Mart argues that his negligence claim is unsustainable.

Plaintiff has not offered a response to Defendant's assertion that summary judgment is appropriate as to his negligence claim. Based on the case law advanced by Defendant, however, summary judgment as to Plaintiff's negligence claim will be granted because neither exception to the general rule that an owner of property is not liable to an employee of an independent contractor for negligence is present and the claim arising from Plaintiff's alleged injury is exclusively one of premises liability.

### B. Plaintiff's Premises Liability Claim

"[A] premises owner has a duty to exercise reasonable care to protect invitees, i.e., persons who enter the premises at the owner's express or implied invitation to conduct business concerning the owner, from an unreasonable risk or harm caused by a dangerous condition of the land that the owner knows or should know the invitees will not discover, realize, or protect themselves against." *Butler v. Ramco-Gershenson, Inc.*, 214 Mich. App. 521, 532 (1995). An invitee such as plaintiff is "entitled to expect" that a premises possessor will "take reasonable care to know the actual conditions of the premises and either make them safe or warn the invitee of dangerous conditions." *Kroll v. Katz*, 374 Mich. 364, 373-74 (1965).

#### 1. Notice

With regard to Plaintiff's premises liability claim, Wal-Mart argues that he has not established that it had the requisite notice required to sustain such a claim. As part of Plaintiff's prima facie case in a premises liability action, he must prove that Wal-Mart either created the alleged unsafe condition, or had actual or constructive knowledge of the alleged unsafe condition. *Whitmore v. Sears. Roebuck & Co.*, 89 Mich. App. 3, 8-9 (1979) (citing *Serinto v. Borman Food Stores*, 380 Mich. 637 (1968)).

Wal-Mart contends that there is no evidence that it caused the condition at issue. Every night upon closing, the floor behind the counter is washed, rinsed and sanitized. ECF No. 8 Ex. 4. The floor is sprayed with a chemical wash solution, the entire floor is scrubbed with a brush and then the cleaner is removed using a squeegee. *Id.* After it has been washed and scrubbed, the floor is then rinsed using a second sprayer, and any residual debris is scrubbed until it is removed, and then the rinse water is removed with a squeegee. *Id.* Finally, a third nozzle is used to spray sanitizer in a covering pattern over the floor and left to air dry. If the sanitizer should happen to puddle, the pooled areas are removed with a squeegee. *Id.*

Wal-Mart further contends that when Plaintiff arrived at the worksite, the Deli Department had been cleaned and closed for some time. Plaintiff worked for about an hour in the vegetable area and then went outside the store to retrieve materials for the Deli Department work. Wal-Mart contends that there is no evidence that the alleged substance was caused by a Wal-Mart employee prior to closing, but instead believes it is more probable that the substance was caused by another contractor during the hour to an hour and a half before Plaintiff arrived at the Deli Department to set up. This is especially plausible because Plaintiff testified that there were mop marks through the substance because someone had tried mopping over it. Wal-Mart employees do not use mops in the Deli Department at closing due to sanitation concerns.

Plaintiff assumes that the alleged substance he slipped in was fryer grease and assumes that the last person to touch the fryer at issue was a Wal-Mart employee. Liability cannot be founded on conjecture; negligence cannot be presumed but must be alleged and affirmatively shown. *Collar v. Maycroft*, 274 Mich. 376, 384 (1936). A presumption of negligence cannot be raised without foundation, and the mere fact that an injury occurred is no evidence of fault on the part of the

defendant. *See Daigneau v. Young*, 349 Mich. 632, 636 (1957). In other words, a plaintiff must produce necessary proof, based on substantial evidence, to establish that a defendant was negligent. *Id.* "There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury. We cannot permit the jury to guess. . . ." *Id.* In order to establish liability, Plaintiff must prove that Wal-Mart either caused the condition or had actual or constructive notice of it, with sufficient evidence "to take the case out of the realm of conjecture." *Whitmore*, 89 Mich. App. at 8-9. Wal-Mart argues that Plaintiff has failed to do so, and cannot establish notice as a matter of law.

In response, Plaintiff contends that an occupier's knowledge of the "actual conditions" of the premises demands adequate inspection to discover latent dangers. *Conerly v. Liptzen*, 41 Mich. App. 238, 241-42 (1972). The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. *Id.* The obligation of reasonable care, however, extends to everything that threatens the invitee with an unreasonable risk of harm. *Id.* The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. *Id.* Under these principles, Plaintiff asserts that Defendant not only had the duty to warn Plaintiff of latent dangers of which it's employees were aware, it also had the duty to inspect the premises to discover possible dangerous conditions of which it's employees were not aware of and to take reasonable precautions to protect Plaintiff from the dangers.

"An injured construction worker [can] pursue a premises liability claim against the owner of the construction site where there was evidence that the owner knew or should have known of the

dangerous condition." *Butler*, 214 Mich. App. at 537. However, where a landowner is the cause of the dangerous condition, notice of the existence of the condition is unnecessary. Stated otherwise, a defendant "could not by its own act create a hazardous condition and then demand that plaintiff, who was injured as a result thereof, prove it had knowledge of such condition. Knowledge of the alleged hazardous condition created by defendant itself is inferred." *Hulett v. Great Atlantic & Pacific Tea Co.*, 299 Mich. 59, 66-67 (1941).

Wal-Mart employee Jeffrey Thompson detailed the routine procedures for cleaning the floor in the Deli Department, although there is no evidence of what was done on the date of Plaintiffs injury. ECF No. 8 Ex. 4. Thompson's affidavit states that the floor is washed with a chemical solution, scrubbed with a brush, and a squeegee is used to remove the cleaner. *Id.* par. 6. This is consistent with Plaintiff's testimony that he was aware that Defendant's employees were always cleaning prior to their arrival on the job site, "because the mop bucket would always be out and there would always be fresh mop marks[.]" ECF No. 8 Ex. 1 at 182. Plaintiff characterized the marks as "mop marks", however, Plaintiff also believes that squeegee marks could have the same appearance as mop marks.

Plaintiff described that after he had fallen and was on the ground, he "looked in front of me right where the ladder was, half the ladder was on it and all underneath the deep fryer, up and around was a white film of grease." ECF No. 8 Ex. 1 at 212. "What it looked like to me was is that when you take grease or oil and you put water on it. Because it appeared to me, because from what I could see was -- is swipe marks with a mop over top of the grease. That possibly they tried to mop it up and they didn't." ECF No. 8 Ex. 1 at 214. The area with the substance was adjacent to the grill or the deep fryer, and was not limited to one area, but was instead multiple circular areas. ECF No.

8 Ex. 1 at 214-15. Plaintiff submits that it is a reasonable inference that as Wal-Mart employees used the deep fryer throughout the day, and oil and grease from the deep fryer would splatter onto the floor in front of the deep fryer. Plaintiff contends that his deposition testimony makes clear that the accumulated oil and grease substance on the floor in front of the deep fryer remained, despite the attempts made by the Wal-Mart employees to clean the floor, as evidenced by the swipe marks throughout the area. Because Wal-Mart employees were the only ones to use the deep fryer and Wal-Mart employees would attempt to clean the floor behind the deli area each night, they created the condition on the floor as it existed when Plaintiff slipped in the grease. Defendant, by its own acts, created the hazardous condition and cannot now demand plaintiff prove it had notice of the condition. "Knowledge of the alleged hazardous condition created by defendant itself is inferred." *Hulett*, 299 Mich. 59, at 67 .

A plaintiff can meet his burden of proof, including demonstrating causation by "establish[ingl a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Skinner v. Square D Co.*, 445 Mich. 153, 159-60 (1994) (quoting *Mulholland v. DEC Int'l Corp.*, 432 Mich. 395, 415 (1989) (emphasis added). In addressing a motion for summary judgment, "the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Skinner*, 445 Mich. at 161.

Defendant suggests inferentially that it is equally possible that in the hour or two between Wal-Mart employees cleaning the deli area and the Plaintiff falling, that another contractor could have created the substance on the floor that caused the Plaintiff to fall. However, Plaintiff testified that no work was being performed in the deli area that evening prior to his fall. Defendant's theory

would require a contractor to turn on the deep fryer, use the fryer in a way that it would splatter grease on the floor, and then attempt to clean it up to create the swipe marks that Plaintiff saw in the grease. Plaintiff submits that this theory is highly unlikely.

On the other hand, Plaintiff emphasizes that he has advanced sufficient evidence, that if believed by a jury, tends to show that there remained an accumulation of grease on the floor in front of the deep fryer despite Defendant Wal-Mart's attempts at cleaning. Because it is for the jury to determine which of the two theories is more plausible, there is a genuine issue of material issue of fact which precludes a grant of summary judgment.

Negligence may be established by circumstantial evidence, and that, where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts that at least a prima facie case is made. *Gadde v. Michigan Consolidated Gas Co.*, 377 Mich. 117 (1966). Plaintiff has established that there was an oily substance on the Deli Department floor at the spot where he fell, from which one might be able to infer that the substance caused his fall. *Cf. Stefan v. White*, 76 Mich. App. 654 (1977). There is no testimony or other evidence, however, from which one may infer that the presence of the substance was the result of the actions of Wal-Mart employees; nor is there evidence that Wal-Mart had actual notice of the presence of the substance. Finally, there is no testimony that the substance had been on the Deli Department floor for a considerable period of time, evidence from which the inference could be drawn that Wal-Mart should have known of its presence. Indeed, there is no evidence from which a jury could infer that the substance had been on the Deli Department floor for some time. Here, as was the case in *Serinto v. Borman Food Stores*, , 380 Mich. 637, the substance was indisputably at the location where Plaintiff fell, but how and when it was deposited at that location

-13-

is a matter of conjecture. Plaintiff has not established a prima facie case that Wal-Mart was on notice of the condition, a requisite element for premises liability. *See Whitmore*, 89 Mich. App. at 8-9 (1979). Additionally, while the Court might agree with Plaintiff that summary judgment would be inappropriate as to the remainder of Defendant's challenges to the open and obvious and causation elements of Plaintiff's prima facie case for premises liability, the fact that the notice element has not been satisfied is case dispositive.

### III. Conclusion

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment (ECF No. 8) is **GRANTED**.

It is further **ORDERED** that the hearing scheduled for May 21, 2012 is **CANCELED** because oral argument will not aid in the disposition of the motion. E.D. Mich. L.R. 7.1(f)(2).

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: June 1, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 1, 2012.

s/Tracy A. Jacobs  
TRACY A. JACOBS